IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

HIDAYA MUSLIM COMMUNITY
ASSOCIATION,
a Michigan nonprofit corporation

    Plaintiff,

v.

MUSLIM COMMUNITY ASSOCIATION
OF ANN ARBOR AND VICINITY,
a Michigan nonprofit corporation,
d/b/a the MICHIGAN ISLAMIC ACADEMY,

    Defendant.

Case No. 4:18-cv-11891-MFL-DRG
District Judge Matthew F. Leitman
Magistrate Judge David R. Grand

_____/

| Thomas B. Bourque (P46595) | Elsayed Mostafa (P69813) |
|---|---|
| Eby Conner Smillie & Bourque, PLLC | Excel Law Firm |
| Attorneys for Hidaya | Attorney for MCA and MIA |
| 301 N. Main Street, 2nd Floor | 26300 Telegraph Road, Suite 103 |
| Ann Arbor, MI 48104 | Southfield, MI 48033 |
| (734) 769-2691 | (248) 385-2688 |

_____/

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR REMAND**

## ARGUMENT

### I. DEFENDANTS SEEK TO INTRODUCE FACTS OUTSIDE OF THE PLEADINGS AND MISQUOTE THEIR OWN EXHIBITS.

Throughout Defendant MIA's Response to Plaintiff's Motion to Remand MIA seeks to introduce evidence outside of the well pleaded allegations of the complaint and attempts to misquote statements from its own exhibits to support its allegation that this case involves the interpretation of the Consent Judgment in Case No. 12-cv-10803. The Court should not consider MIA's outside evidence and disregard quotations from exhibits that are not contained in the exhibits.

As stated in Hidaya's initial brief, federal jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint. *City of Warren v City of Detroit,* 495 F. 3d. 282, 286 (6th Cir 2007). MIA invites this court to ignore the "well-pleaded complaint" rule and to examine several affidavits and documents not raised in Hidaya's complaint. This Court should refuse MIA's invitation.

**Outside evidence.** MIA submitted 7 documents in support of its response. Dkt. 5-7 is a copy of the agreement between the parties that was attached to Hidaya's complaint. Every other exhibit goes well beyond the allegations in Hidaya's complaint and should not be considered.

*Dkt. 5-1* is an unsigned private placement memorandum. MIA argues that the document governed the acquisition and dispensation of the parcel and obligated

1

Hidaya to donate acres to MIA (Dkt. 5, p. 3). There is nothing in the document that shows it was ever executed and the exhibit is missing pages (page 3) and has pages that do not match (p. 5 starts with a partial sentence but p. 4 ends with a complete sentence). MIA does not attempt to describe how its rights could have been affected by this document. Hidaya did not sue on that document and there is nothing about that document that would support federal question jurisdiction.

*Dkt. 5-3* and *Dkt. 5-5* are emails from attorney Dan Dever to MIA's present counsel Gadeir Abbas. The Dever emails do not show that Hidaya was a party to the Consent Judgment or that MIA was acting as an agent of Hidaya in prosecution the lawsuit against Pittsfield Township. Those emails show only that Hidaya, consistent with the Michigan contract rights granted by MIA in the June 13, 2015 Agreement, was making certain that any rights to enforce the Consent Judgment **against Pittsfield Township** were included in MIA's Consent Judgment in favor of any successors and assigns.

*Dkt. 5-4* is a Declaration by Terek Nahlawi as to the intentions of the parties relating to the Michigan contract terms and enforcement of those terms. That declaration includes MIA's thoughts during a facilitation and proposals during a facilitation session. Hidaya was not part of any facilitation as it was not a party to the suit against Pittsfield Township. The declaration describes proposals to change the Agreement between the parties and alleged actions taken by Hidaya as to

2

enforcement of the Agreement terms. Those asserted facts are not part of Hidaya's complaint and can at best be described as a defense to the contract between the parties. Any such contract defenses do not affect enforcement of the Consent Judgment.

*Dkt. 5-6* is a Declaration from MIA's present counsel. He claims to have taken direction from Hidaya as to Hidaya's wishes to ensure that the Consent Judgment reflected what Hidaya wanted. Mr. Abbas claims that Hidaya approved the Consent Judgment and MIA argues that such approval makes it a party to the Consent Judgment (Dkt 5, p. 5) such that this Court should accept jurisdiction over the rights of the parties to the June 2015 Agreement.

Nothing in the Abbas declaration shows any agreement of Hidaya to the Consent Judgment. Hidaya, as a potential successor, naturally wanted to make sure that the terms of the Consent Judgment bound successors and ran with the land since under the June 2015 Agreement MIA could either buy the property for $2,000,000 or transfer it back to Hidaya for $1 (with Hidaya being required to pay MIA the value of 5 acres). The fact that Hidaya's counsel reviewed language of the Consent Judgment does not mean that Hidaya was a party to the Consent Judgment. In fact, at this point Hidaya does not have title to the land and has never been paid by MIA so there is nothing in the Consent Judgment for Hidaya to enforce against Pittsfield Township. MIA simply has refused to comply with either option it had under the

3

Agreement and now seeks to claim federal jurisdiction over a breach of contract case that does not require any interpretation of the Consent Judgment.

**Misquotes**. MIA starts its Introduction with a quote from Mr. Dever and repeats that quote at page 4. The "Definitions are definitions" quote is not contained in either email. MIA quotes Mr. Dever again at Dkt. 5, p. 5 when it states that he said "we (Hidaya) are defined as a Plaintiff." That quote does not appear in either email from Mr. Dever and is likewise absent from the declarations submitted as Dkt. 5-4 and Dkt. 5-6.

## II. THERE IS NO FEDERAL QUESTION IN THIS DISPUTE BETWEEN MICHIGAN ENTITIES OVER INTERPRETATION OF A MICHIGAN CONTRACT.

Hidaya's complaint seeks to enforce the terms of the June 2015 Agreement (Dkt. 5-7). Under that Agreement MIA had two options: MIA could a) retain ownership of the parcel for $2,000,000 and develop the entire parcel however it wished, or b) convey ownership to Hidaya for $1 (Dkt. 5-7, p. 2, ¶2). If MIA chose to convey the property back to Hidaya, then MIA would still retain the rights to build the school pursuant to a favorable disposition of the Pittsfield lawsuit (Dkt. 5-7, p. 2, ¶3). Regardless of MIA's decision to retain or convey the parcel, MIA agreed to share the proceeds of its lawsuit (Dkt. 5-7, p. 3, ¶7).

Enforcement of the above provisions of the Agreement does not implicate any interpretation or amendment of the Consent Judgment. If MIA pays to retain

4

the property it can develop the parcel according to the Consent Judgment (assuming MIA has complied with the terms of the Consent Judgment). If MIA conveys the property it still has the right to build a school on the property pursuant to the Consent Judgment. The payment of a portion of the settlement proceeds does not affect MIA's rights under the Consent Judgment.

MIA now argues that it was acting as Hidaya's agent in negotiating the Consent Judgment (Dkt. 5, p. 7). That argument is without substance in deciding federal jurisdiction for numerous reasons.

First, MIA did not make that assertion in the prior case and there is nothing in the Consent Judgment that suggests MIA was acting as an agent for anyone. Hidaya was not part of any facilitation, never appeared in the prior case, and did not sign the Consent Judgment. Second, Hidaya's present action is not predicated on any violation of the Consent Judgment or any change in the Consent Judgment. Third, enforcement of the June 2015 Agreement does not affect Pittsfield's rights and does not affect MIA's rights under the Consent Judgment- if MIA pays to retain the property it can build the school and if it conveys it back to Hidaya then it can still build the school per the Consent Judgment. What MIA seeks to do is neither pay for the property nor deed it back on the spurious claim that complying with the terms of its Michigan contract would require it to violate the Consent Judgment. Fourth, MIA has not provided this Court with any rational basis for the

Court to determine, under federal law, Hidaya's right to payment of 25% of the settlement proceeds per the contract as that issue could not be a violation or amendment to the Consent Judgment. The Consent Judgment does not describe how MIA must use the settlement proceeds it received.

This case involves only interpretation of a Michigan contract between Michigan entities. There is no basis for federal question jurisdiction in this case and MIA has cited no authority that would permit this Court to exercise such jurisdiction.

## REQUESTED RELIEF

Plaintiff Hidaya requests that this Court grant its Motion for Remand and remand this case to the Washtenaw Circuit Court. Plaintiff Hidaya also requests that this Court require Defendant to pay the just costs Hidaya has incurred because of Defendant's improper removal, including actual attorney's fees., pursuant to 28 USC §1447(c).

Dated: July 30, 2018

Respectfully submitted,

_____
Thomas B. Bourque (P46595)
Eby Conner Smillie & Bourque, PLLC
Attorneys for Hidaya
301 N. Main Street, 2nd Floor
Ann Arbor, MI 48104
(734) 769-2691

6

## PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing document was served upon the attorney(s) of record of all the party(ies) in this action by serving same at the business address(es) as disclosed by the pleading of record herein July 30, 2018, by U.S. Mail and by Electronic Mail.

_____
Thomas Bourque

(S:\TBB\Hidaya\Suit v MCA\Reply Brief for Motion for Remand.docx)